IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MOHAMED A. EL-TABECH, | ) | |
| | ) | |
| Plaintiff, | ) | 4:04cv3231 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| HAROLD W. CLARKE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the following pending motions: (1) filing no. 41, the Motion to Dismiss filed by defendants-Elizabeth Conley, M.D., Janssen Williams, M.D. and Dave Thomas (collectively "medical defendants"); (2) filing no. 45, the Motion to Dismiss filed by defendants-Francis Britten, Mary Carmichael, Harold W. Clarke, Randy Cole, Michael Kenney and Douglas Sell (collectively "DCS defendants"); (3) filing no. 56, the Motion for Default Judgment against Defendant Paul Church, filed by the plaintiff, Mohamed A. El-Tabech; (4) filing no. 57, the plaintiff's Motion to Strike Defendants' Supplemental Brief; (5) filing no. 59, the plaintiff's Motion for a Preliminary Injunction; (6) filing no. 64, the DCS defendants' Response to Motion for Preliminary Injunction, and filing no. 65, the medical defendants' Objection to Motion for Preliminary Injunction; (7) filing no. 69, the plaintiff's Objection to Motion to Depose a Confined Person; and (8) filing no. 71, the plaintiff's Objection to Order granting the Motion to Depose a Confined Person.

The plaintiff, a prisoner in the custody of the Nebraska Department of Correctional Services ("DCS"), seeks monetary, declaratory and injunctive relief for deprivations of due process and equal protection and for violations of the Eighth Amendment to the United States Constitution, in connection with his prolonged confinement in segregation. The plaintiff also alleges claims of excessive force, retaliation, denial of First Amendment rights, and deprivation of medical care. Pursuant to 42 U.S.C. § 1983, he has sued the defendants in their individual and official capacities.

The plaintiff states that he has been continuously confined in segregation, first at the Nebraska State Penitentiary ("NSP") and currently at the Tecumseh State Correctional Institution ("TSCI") for an unduly long period. He complains of conditions in the TSCI segregation unit, such as an absence of windows, visitation, contact with other inmates, and space in his cell. His showers, exercise and access to the prison law library are restricted to a bare minimum. In addition, his cell is infested with vermin; sewage backs up in the corridors, and conditions are inferior even to those on death row. The plaintiff asserts that his living conditions not only impose an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life," Sandin v. Conner, 515 U.S. 472, 484 (1995), but they amount to cruel and unusual punishment. In addition, the plaintiff

contends that he has received substandard medical care while housed in segregation.

The defendants assert that the complaint fails to state a claim on which relief may be granted. Fed. R. Civ. P. 12(b)(6). I agree as to the plaintiff's due process claim and as to the claims against the medical defendants. However, I do not agree as to the plaintiff's Eighth Amendment and other claims against the DCS defendants. However, as discussed below in this Memorandum and Order, I agree with the defendants that the former Director of DCS and the Warden of NSP cannot be held liable to the plaintiff on the basis of respondeat superior or vicarious liability. Therefore, insofar as those are the principles on which the plaintiff seeks to impose liability on Harold W. Clarke and Michael Kenney, he may not do so.

## Due Process Claim

The plaintiff engaged in two escape attempts from NSP, the first in 1995 and the second on April 25, 2001. On April 25, 2001, officials at NSP placed the plaintiff on immediate segregation. At some point, he was later reclassified to administrative confinement. Then, the plaintiff received a security classification of intensive management on March 22, 2002. All of those classifications involved placement in segregation. On July 18, 2002, the plaintiff transferred to TSCI, where he remains classified to intensive management and housed in segregation. The plaintiff complains that he has been subjected to deprivations of procedural and substantive due process in connection with his security reclassifications.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005). Thus, claims regarding the right to either procedural or substantive due process must begin with identification of a protected liberty or property interest. Singleton v. Cecil, 176 F.3d 419, 424-25, 425 n. 7 (8th Cir.) (*en banc*), cert. denied, 120 S.Ct. 402 (1999).

In order to constitute a liberty interest, an individual must have a legitimate claim or entitlement to the subject of the deprivation which rises to more than a unilateral hope, or expectation. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 459 (1989). A protected liberty interest may arise from either the Due Process Clause of the U.S. Constitution, itself, or from a state-created statutory entitlement. Hewitt v. Helms, 459 U.S. 460, 466 (1983); Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002) (citations omitted).

Liberty Inherent in the Due Process Clause

The Due Process Clause of its own force does not afford a prisoner a liberty interest in remaining in the general prison population. Lekas v. Briley 405 F.3d 602, 607 (7th Cir. 2005). See also Holly v. Woolfolk, 415 F.3d 678, 2005 WL 1661528 at *1 (7th Cir. 2005) ("being placed in segregation is too trivial an incremental deprivation of a convicted

prisoner's liberty to trigger the duty of due process"). Accord Christianson v. Clarke, 932 F. Supp. 1178, 1182 (D. Neb. 1996) ("[T]he Due Process Clause itself does not protect any liberty interest in remaining free from administrative segregation or protective custody."). "[T]he notion of liberty inherent in the Fourteenth Amendment Due Process Clause is not implicated by" a placement or transfer which subjects a convicted prisoner to more severe conditions of confinement, without more. Cf. Meachum v. Fano, 427 U.S. at 225 ("That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.").[1]

Similarly, interprison transfers, in and of themselves, do not trigger due process protections, because convicted prisoners have no liberty interest under the Due Process Clause in being assigned to any particular cell or facility. Hewitt v. Helms, 459 U.S. at 468 (transfer to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence). See also Montayne v. Haymes, 427 U.S. 236, 242 (1976) ("The [Due Process] Clause does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive"). Therefore, "the notion of liberty inherent in the Fourteenth Amendment Due Process Clause is not implicated by" a placement or transfer which subjects a convicted prisoner to more severe conditions of confinement, without more.

State-Created Liberty Interest

Consequently, the plaintiff's liberty interest, if any, must emanate from state law. The plaintiff's claim to a state-created liberty interest is governed by the Supreme Court's decision in Sandin v. Conner, 515 U.S. 472 (1995). "Sandin found no liberty interest protecting against a 30-day assignment to segregated confinement because [the assignment] did not 'present a dramatic departure from the basic conditions of [the inmate's] sentence.'" Wilkinson v. Austin, 125 S.Ct. at 2394, *quoting* Sandin, 515 U.S. at 485.

In Sandin, the Court substantially narrowed the circumstances in which a state-created liberty interest arises:

> The time has come to return to the due process principles we believe were

---

[1] For a convicted state prisoner, a liberty interest traceable to the Due Process Clause itself, instead of to state law, is limited only to freedom from restraints which "exceed[ ] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." Sandin v. Conner, 515 U.S. 472, 484 (1995). "Examples would be involuntary administration of psychotropic medication, see Washington v. Harper, 494 U.S. 210, 221-22 ... (1990), or involuntary transfer to a state mental hospital for treatment, see Vitek v. Jones, 445 U.S. 480, 494 ... (1980)." Mitchell v. Horn, 318 F.3d 523, 531 n. 4 (3d Cir. 2003), *citing* Sandin, 515 U.S. at 484.

>correctly established and applied in Wolff and Meachum. Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause .... But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. at 483-84 (citations omitted). Therefore, to demonstrate a liberty interest created by state law, the plaintiff must show that the protested conditions exceed the normal range and limits of custody and impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

However, the Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under Sandin." Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002). Accord Kennedy v. Blankenship, 100 F.3d 640, 642 n. 2, 643 (8th Cir.1996) (placement in punitive isolation was not an atypical and significant deprivation even though the prisoner faced restrictions in privileges regarding mail, telephone, visitation, commissary, and personal possessions). See also Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003): "We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship." The absence of contact visitation, exercise privileges, and chapel rights for 37 days did not constitute an atypical and significant hardship. Id.

In Nebraska, deprivation of good-time credit implicates a liberty interest sufficient to require due process. Dailey v. Nebraska Dept. of Corr. Servs., 578 N.W.2d 869, 873 (1998). See generally Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974) (when a state provides a right to good time and specifies the methods of forfeiture, an inmate has a constitutionally-protected liberty interest entitling him or her to procedures designed to ensure that the state-created right is not arbitrarily abrogated).

On the other hand, the Nebraska courts have rejected the argument that segregation alone constitutes an atypical and significant hardship giving rise to a liberty interest under state law. See, e.g., Martin v. Curry, 690 N.W.2d 186, 192 (Neb. App. 2004) (inmate had no clearly established liberty interest when prison officials extended his tentative release date from disciplinary segregation and placed him on administrative confinement). See Thompson v. Nebraska Dept. of Correctional Services, 2002 WL 857327 at *6 (Neb. App. May 7, 2002) (unpublished): "Thompson has no protected liberty interest that was violated by her placement in disciplinary segregation. Disciplinary segregation alone is not an atypical and significant hardship, and Thompson does not have a state-created right that is being arbitrarily abrogated, because her good time is not affected." See also Christianson v. Clarke, 932 F. Supp. 1178, 1183 (D. Neb. 1996): "An allegation by an inmate that his due process rights were violated by virtue of his placement in administrative segregation, without more, does not implicate a liberty interest."

4

Allegations of Conspiracy

In the absence of an "atypical and significant hardship," a change in conditions of confinement does not inflict an injury cognizable under the Due Process Clause, even if prison officials harbor punitive motives. The Court in Sandin rejected the argument that action taken for punitive purposes necessarily implicates a liberty interest: "Conner asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation." Sandin v. Conner, 515 U.S. at 484 (distinguishing convicted prisoners from pretrial detainees who "may not be punished prior to an adjudication of guilt in accordance with due process of law"). As to convicted prisoners, "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Id. at 485.

Thus, a plaintiff's accusations of conspiracy or improper motive cannot create a liberty interest where none otherwise exists. The factors bearing on whether placement in segregation imposes the kind of atypical and significant hardship which gives rise to a liberty interest are objective, i.e.: (1) the conditions of confinement in segregation; (2) the length of time spent in segregation; and (3) the effect, if any, on the duration of the prisoner's incarceration. Sandin v. Conner, 515 U.S. at 486-87.

In Wilkinson v. Austin, 125 S.Ct. 2384 (2005), for example, despite the usual rule that an interprison transfer to a maximum security facility with less favorable conditions is within the normal limits of a conviction, transfer to Ohio's "Supermax facility (OSP)," unquestionably gave rise to a liberty interest under the principles expressed in Sandin. Conditions there are more restrictive than any other form of incarceration in Ohio, including conditions on death row. Id. at 2389. Placement at OSP lasts for an indefinite period, limited only by an inmate's maximum prison term, and parole eligibility while at OSP is suspended. Id.[2]

---

[2]"For an inmate placed in OSP, almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in Sandin, placement at OSP is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration.... **While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context**. It follows that respondents have a liberty interest in avoiding assignment to OSP." Wilkinson v. Austin, 125 S.Ct. 2384, 2394-95 (2005) (emphasis added).

The plaintiff describes disgraceful conditions of confinement in segregation. However, he does not establish the other two Sandin factors. Unlike the plaintiffs in Wilkinson v. Austin, the plaintiff does not allege that placement in segregation affects the duration of his incarceration. As for the length of time the plaintiff has remained in segregation, the courts have not developed a consensus regarding how much time in segregation can be considered an atypical and significant hardship. On the outer end of the spectrum, "indefinite" placement in segregation may create, or contribute to, the deprivation of a liberty interest within the meaning of Sandin, i.e., an atypical and significant hardship. Wilkinson v. Austin, 125 S.Ct. at 2394-95. The Third Circuit Court of Appeals held in Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000), that eight years in administrative confinement, during which the plaintiff remained locked in his cell for all but two hours per week, was denied contact with his family, visits to the library and participation in any education, vocational, or other activities, clearly implicated a protected liberty interest.

On the other hand, the Third Circuit has held that administrative confinement for fifteen months did not impose an atypical and significant hardship. Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997). Similarly, in Jones v. Baker, 155 F.3d 810, 813 (6th Cir. 1998), the Sixth Circuit did not consider confinement in administrative segregation for two and one-half years an atypical and significant hardship.

In this case, while the plaintiff describes deplorable conditions of confinement in segregation, the length of time he has spent there, coupled with the severity of those conditions, is not yet "outside the ordinary realm of what is to be expected of prison life,"[3] and the placements in segregation have had no effect on the overall duration of the plaintiff's period of imprisonment. As a result, the plaintiff has not met the threshold test for a liberty interest created by state law, i.e., "an atypical and significant hardship in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Because the plaintiff has no liberty interest arising under the Due Process Clause itself or arising under state law, he did not suffer a deprivation of liberty entitling him to the protections of the Due Process Clause. Therefore, the plaintiff's due process claims must be dismissed.

**Medical Defendants**

During the relevant times, the medical defendants were health care providers under contract with DCS to treat inmates. As such, they acted under color of state law for purposes of the plaintiff's claims pursuant to 42 U.S.C. § 1983. See West v. Atkins, 487 U.S. 42, 51-56 (1988) (physician under contract with state to treat inmates at state prison acted under color of state law); Burke v. North Dakota Dept. of Corrections & Rehabilitation, 294 F.3d 1043, 1044 (8th Cir. 2002) (plaintiff stated a claim for relief under § 1983 against medical-services contractor for North Dakota inmates; corporation acting under color of state law can be liable under § 1983 for its own policies if such policies are unconstitutional).

---

[3] Christianson v. Clarke, 932 F. Supp. 1178, 1182 (D. Neb. 1996), *citing* Sandin.

6

While deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment, Estelle v. Gamble, 429 U.S. 97, 105-06 (1976), the plaintiff's claims against Dr. Conley, Dr. Williams and Dave Thomas, the Medical Director at TSCI, simply do not amount to a violation of the Eighth Amendment. The facts, as described by the plaintiff, relate only to the refusal of those defendants to exercise their professional judgment in accordance with the plaintiff's view of his medical needs.

"[D]eliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct," Olson v. Bloomberg, 339 F.3d 730, 736 (8th Cir. 2003), and more than a disagreement over the proper course of treatment. Jones v. Norris, 310 F.3d 610, 612 (8th Cir. 2002). The plaintiff does not allege a complete absence of treatment or similar conduct, as in Burke v. North Dakota Dept. of Corrections and Rehabilitation, 294 F.3d at 1044 (plaintiff "alleged that he was denied treatment entirely; that NDDCR's medical director ... prevented him from being seen by doctors; and that she was using her position to block his treatment because of his prior lawsuits against her."). The plaintiff requested medical care, and the defendants examined and treated him. Even if the plaintiff would have benefitted from additional or different treatment, more than even gross negligence is necessary to rise to the level of a constitutional violation. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000). See also Kayser v. Caspari, 16 F.2d 280, 281 (8th Cir. 1994) (plaintiff's disagreement with the course of treatment provided to him is not a sufficient basis for an Eighth Amendment claim).

The plaintiff's factual allegations against the medical defendants do not state a claim on which relief may be granted under the federal civil rights laws. Therefore, filing no. 41, the Motion to Dismiss filed by defendants-Conley, Williams and Thomas, will be granted.[4]

### Harold W. Clarke and Michael Kenney

There is no equivalent in the federal civil rights laws to the common law tort liability based on respondeat superior. Under 42 U.S.C. § 1983, a defendant may not be held liable on principles of vicarious liability or respondeat superior for constitutional injuries allegedly inflicted by other persons. See, e.g., Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 778 (8th Cir. 2001), citing Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 405 (1997) and City of Canton v. Harris, 489 U.S. 378, 385 (1989): "Rigorous standards of culpability and causation must be applied to ensure that [an

---

[4]With the dismissal of the plaintiff's federal claims against defendants-Elizabeth Conley, M.D., Janssen Williams, M.D. and Dave Thomas, the court declines to exercise supplemental jurisdiction over any state-law claims asserted against those defendants. See 28 U.S.C. § 1367 (a federal district court may decline to exercise supplemental jurisdiction over claims arising under state law when the claim(s) over which the court has original jurisdiction have been dismissed). Therefore, the dismissal of the plaintiff's federal claims will be with prejudice, but any claims arising under state law against defendants-Conley, Williams and Thomas will be dismissed without prejudice.

employer] is not held liable solely for the actions of its employees .... The purpose of such a stringent standard is to prevent § 1983 liability from collapsing into state tort law or into respondeat superior liability, an intent not contemplated by § 1983."

Similarly, supervisor liability under § 1983 must be based on some form of actual and direct participation in the constitutional violation. See, e.g., Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002): "We have held a supervisor is only liable 'for an Eighth Amendment violation when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation.'" (Citation omitted.) Thus, this court will dismiss the plaintiff's claims against Harold W. Clarke, former Director of DCS, and Michael Kenney, the Warden of NSP, insofar as the plaintiff's claims against those defendants are based on vicarious liability. Insofar as the plaintiff's claims may involve some form of direct participation by those defendants in constitutional violations, the claims are not dismissed. Whether any culpable participation by Clarke and Kenney occurred will have to await the development of a factual record.

## Paul Church

In filing no. 51, I stated that the record did not reveal whether Paul Church had been properly served with process, as Mr. Church did not sign a receipt for the delivery of the summons and complaint by certified mail. Although another person signed for him, it was not clear whether that person was authorized to receive certified mail for Church or even whether Church was present at the location to which the certified mail was directed. However, I stated in filing no. 51 that the plaintiff could reassert his motion for default judgment as to Church, supported by sufficient information for the court to determine whether Church has been properly served. The plaintiff has done so. In attachments to filing no. 56, the plaintiff has established that Church received the summons and complaint sent by the U.S. Marshal. However, the plaintiff has not complied with the requirements of Fed. R. Civ. P. 55 in order to obtain a default judgment. More important, he has not stated a claim on which relief may be granted as to Church.

The plaintiff states that he is a devout Muslim who requires kosher meals. His food trays are often contaminated by the presence of meat or meat gravy together with dairy products, a deviation from his religious practices for which he holds Church responsible. Church is the Food Service Director employed by Aramark, the food service company which, pursuant to a contract with DCS, provides meals to inmates at TSCI.

However, in filing no. 56, the plaintiff has incorporated an Inmate Interview Request ("kite") which he wrote to Church complaining about the food service. Church responded to the kite as follows: "Mr. El-Tabech, the TSCI food service is required to follow the DCS Master Menu. You are indeed asking for a special-made tray when you ask for the elimination of meat, gravy, jello, and pudding from your tray. Food Service cannot honor special tray requests and must serve the foods indicated on the master menu." Therefore, the plaintiff's own submission clearly indicates that Church is not responsible for the policy to which the plaintiff objects, and Church lacks the power to deviate from the terms of the

8

contract between his employer, Aramark, and DCS.

Therefore, the plaintiff's claim concerning the obstruction of his religious practices will not be dismissed, but Paul Church, who, by the plaintiff's own submissions, has not caused the problem and has no power to rectify it, *will* be dismissed. Therefore, filing no. 56, the plaintiff's Motion for Default Judgment against Defendant Paul Church, is denied. In addition, Paul Church is dismissed from this litigation as a defendant because the plaintiff has not stated a claim on which relief may be granted as to him.[5] See 28 U.S.C. § 1915A(b)(1), which directs the court to screen prisoner complaints and dismiss matters which fail to state a claim for relief. Accord 28 U.S.C. § 1915(e)(2)(B)(ii) (same, under the in forma pauperis statute).

### Eighth Amendment Claims

The plaintiff's claims of cruel and unusual punishment are inherently factual. A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) tests only the legal sufficiency of the plaintiff's complaint if the factual allegations in the complaint are accepted as true. Springdale Educ. Ass'n v. Springdale School Dist., 133 F.3d 649, 651 (8th Cir. 1998). See also Browning v. Clinton, 292 F.3d 235, 241-42 (D.C. Cir. 2002): "[W]e accept the plaintiff's factual allegations as true and construe the complaint 'liberally,' 'grant[ing] plaintiff[ ] the benefit of all inferences that can be derived from the facts alleged,' .... At the Rule 12(b)(6) stage, we do not assess 'the truth of what is asserted or determin[e] whether a plaintiff has any evidence to back up what is in the complaint.'" (Citations omitted.) Thus, a claim should be liberally construed in the light most favorable to the plaintiff and should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).

In light of that strict standard, filing no. 45, the DCS defendants' motion to dismiss, will be denied insofar as the motion pertains to the plaintiff's Eighth Amendment and related claims. "The Eighth Amendment prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities .... However, any analysis of confinement conditions must be based on the totality of the circumstances .... We have found a constitutional violation where inmates were forced to work without protective gear 'in a shower of human excrement.'... We have also ordered prisons to provide protective gear and to warn of the dangers of working in AIDS-contaminated waste .... We have similarly found a violation where an inmate was forced to endure a cell covered with filth and human waste for two full years .... [T]he length of time a prisoner is subjected to harsh conditions is a critical factor in our analysis." Smith v. Copeland, 87 F.3d 265, 268-69 (8th Cir. 1996) (citations omitted). See also Owens v. Scott County Jail, 328 F.3d 1026, 1027 (8th Cir.

---

[5]The claim regarding interference with the plaintiff's First Amendment religious rights may still be asserted against the appropriate defendant(s), whether that would be the Director of DCS or some other party or parties.

2003) (*per curiam*) (determining that five weeks of exposure to unsanitary conditions might be sufficient to constitute a viable Eighth Amendment claim and remanding for a factual determination whether the conditions of pretrial detention were unconstitutionally punitive):

> While reviewing the totality of circumstances of Owens's confinement ... we focus on the length of his exposure to unsanitary conditions and how unsanitary the conditions were, see Hutto v. Finney, 437 U.S. 678, 686-87 ... (1978) (filthy, overcrowded cell might "be tolerable for a few days and intolerably cruel for weeks or months"); Whitnack, 16 F.3d at 958 (length of time required for conditions to be unconstitutional decreases as level of filthiness increases).
>
> Owens slept next to a toilet for roughly five weeks. The district court emphasized that Owens was "only in this situation for a limited time." Yet, five weeks is longer than other cases where we ruled that exposure to unsanitary conditions was not unconstitutional because of the brevity of exposure. See, e.g., Smith, 87 F.3d at 265 (no constitutional violations where pretrial detainee was confined in cell with overflowed toilet for four days); White v. Nix, 7 F.3d 120, 121 (8th Cir. 1993) (no constitutional violation where pretrial detainee was confined in unsanitary cell for eleven days); Goldman v. Forbus, 17 Fed. Appx. 487, 488, 2001 WL 838997 (8th Cir. 2001) (unpublished per curiam) (no constitutional violation where pretrial detainee slept six nights on floor next to toilet). Indeed, we have noted the need to be "especially cautious about condoning conditions that include an inmate's proximity to human waste." See Fruit v. Norris, 905 F.2d 1147, 1151 (8th Cir. 1990). Hence, we reverse the district court's ruling that Huff was entitled to judgment as a matter of law and remand for further proceedings.

See also Tokar v. Armontrout, 97 F.3d 1078, 1082 n. 4 & 5 (8th Cir. 1996).

"The 'cruel and unusual punishments' standard applies to the conditions of a prisoner's confinement .... While 'the primary concern of the drafters was to proscribe tortures and other barbarous methods of punishment,' the Supreme Court's 'more recent cases [show that] [t]he [Eighth] Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'... 'No static test can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." Chandler v. Crosby, 379 F.3d 1278, 1288-89 (11th Cir. 2004) (citations omitted).

## Remaining Claims

The plaintiff's remaining claims are factually intertwined with the Eighth Amendment allegations. For example, the plaintiff complains of the meager amount of time he is

10

permitted to have access to legal materials in segregation, and he alleges that the defendants deny him adequate opportunities for certain aspects of religious observance. He also asserts that he has been subjected to retaliation and harassment for the exercise of his First Amendment rights while in segregation. For example, personal items such as prescription eyeglasses, underwear and a sweatshirt have been seized from his cell.[6] The allegations of the complaint as to those claims are legally sufficient to withstand the DCS defendants' Motion to Dismiss. Therefore, with the dismissal of the plaintiff's due process and medical claims, this litigation will proceed on the basis of the plaintiff's remaining claims.

## Preliminary Injunction

In filing no. 61, I directed the parties to address the plaintiff's Motion for a Preliminary Injunction. I stated that in the Eighth Circuit, the courts engage in a balancing test of four factors (the "Dataphase factors") when determining whether to issue a temporary restraining order ("TRO") or preliminary injunction. The Dataphase factors are:

1. the threat of irreparable harm to the movant;
2. the balance between the harm to the movant and any injury that temporary injunctive relief would inflict on the nonmoving party should the injunction issue;
3. the likelihood of success on the merits; and
4. the public interest.

---

[6]Although prison authorities have a great deal of discretion in running their institutions, they may not use their discretion to retaliate against an inmate for exercising First Amendment rights. See, e.g., Rouse v. Benson, 193 F.3d 936, 940 (8th Cir. 1999) (a prisoner may not be transferred in retaliation for his exercise of constitutionally protected rights). See also Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (reversing dismissal of a retaliation claim):

> In dismissing Mitchell's retaliation claim, the District Court failed to recognize that "[g]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000) (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)). A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials "'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,'" and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225) (alteration in original).

See, e.g., Randolph v. Rodgers, 170 F.3d 850, 857 (8th Cir. 1999); Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995); Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109 (8th Cir. 1981) (*en banc*). The burden of proving that preliminary injunctive relief should be granted "rests entirely with the movant." Goff v. Harper, 60 F.3d at 520. "[F]or an injunction to issue 'a right must be violated' and ... 'the court must determine' whether 'a cognizable danger of future violation exists and that danger must be more than a mere possibility.'" Id. at 521 (citation omitted).

I find on the basis of the parties' submissions that the Dataphase factors do not weigh in favor of pretrial relief for the plaintiff. No threat of irreparable harm has been demonstrated if this case simply proceeds through discovery and, if appropriate, to trial in the ordinary course.[7] On the other hand, the injury to the nonmoving parties could be substantial if the court granted relief before the parties have even begun discovery. A great deal of deference is owed to prison officials regarding prison administration. As for the plaintiff's likelihood of success on the merits, some of the plaintiff's claims have survived the DCS defendants' Motion to Dismiss. It now falls to him to substantiate those claims with evidentiary support. Filing no. 59, the plaintiff's Motion for a Preliminary Injunction, is denied. Of course, if the plaintiff prevails on some or all of his remaining claims, injunctive relief can be incorporated into the judgment as appropriate.

## Deposition

The plaintiff has no right to object to the defendants' decision to take his deposition. The defendants do not have to offer any reciprocal courtesies of any kind. Discovery is a right under the Federal Rules of Civil Procedure. Because this case was filed without counsel by a prisoner, the case is exempt from the initial disclosure and planning conference requirements of Fed. R. Civ. P. 26(a)(1)(E)(iii) & 26(f). However, I will request that Magistrate Judge F. A. Gossett enter an Order Setting a Schedule for the Progression of this case. Filing no. 69, the plaintiff's Objection to Motion to Depose a Confined Person, and filing no. 71, the plaintiff's Objection to Order granting the Motion to Depose a Confined Person, are denied. If the plaintiff's objections have caused the deposition to be rescheduled, the defendants may file a new notice of deposition or request for leave to

---

[7]For example, to prevail on his claim regarding denial of the right of access to the courts, the plaintiff must show not only that the legal resources available to him are inadequate, but he must also establish that he suffered an actual injury to pending or contemplated legal claims. See, e.g., Bear v. Kautzky, 305 F.3d 802, 806 (8th Cir. 2002) (court issued preliminary injunction banning prison officials from enforcing a policy prohibiting prisoners from communicating with jailhouse lawyers; plaintiffs had pending postconviction claims and presented evidence of irreparable injury, i.e., that they had no satisfactory alternative way of obtaining legal assistance for their pending claims; also, prison officials presented no evidence of a legitimate penological purpose for the policy). In this case, the plaintiff may be able to make the required showing, but he has not as yet done so in affidavits or other materials contemplated by Fed. R. Civ. P. 65.

depose the plaintiff. The plaintiff shall not obstruct discovery, and, similarly, when the plaintiff serves his written discovery requests on the attorney for the defendants, the defendants' attorney, too, shall cooperate in a timely and professional manner.

THEREFORE, IT IS ORDERED:

1. That filing no. 41, the Motion to Dismiss filed by defendants-Elizabeth Conley, M.D., Janssen Williams, M.D. and Dave Thomas (collectively "medical defendants"), is granted, and those defendants are dismissed from this litigation; the plaintiff's claims arising under the federal civil rights laws against defendants-Conley, Williams and Thomas are dismissed with prejudice; any claims arising under state law against those defendants are dismissed without prejudice;

2. That filing no. 45, the Motion to Dismiss filed by defendants-Francis Britten, Mary Carmichael, Harold W. Clarke, Randy Cole, Michael Kenney and Douglas Sell (collectively "DCS defendants"), is granted in part and denied in part as follows:

   a. The plaintiff's claims based on the Due Process Clause are dismissed;

   b. Insofar as the plaintiff's claims against Harold W. Clarke and Michael Kenney are based on principles of vicarious liability or respondeat superior, such claims are dismissed; insofar as the plaintiff's claims involve some form of direct participation by those defendants in constitutional violations, the claims are not dismissed;

3. That filing no. 56, the plaintiff's Motion for Default Judgment against Defendant Paul Church, is denied; the plaintiff's claims against Paul Church are dismissed pursuant to 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2)(B)(ii), because the plaintiff's own submissions indicate that others are responsible for the deprivations alleged;

4. That filing no. 57, the plaintiff's Motion to Strike Defendants' Supplemental Brief, is denied, and leave to file the brief is granted nunc pro tunc;

5. That filing no. 59, the plaintiff's Motion for a Preliminary Injunction, is denied;

6. That filing no. 65, the Objection to Motion for Preliminary Injunction filed by the medical defendants is granted insofar as filing no. 65 is consistent with this Memorandum and Order;

7. That filing no. 69, the plaintiff's Objection to Motion to Depose a Confined Person, is denied;

8. That filing no. 71, the plaintiff's Objection to Order granting the Motion to Depose a Confined Person, is denied; and

9. That Magistrate Judge F. A. Gossett is requested to enter an Order Setting a Schedule for the Progression of this case.

DATED this 31st day of August, 2005.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief District Judge